UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EMPIRE BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-0388-CVE-PJC |
| | ) | |
| BILL J. DUMOND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are Plaintiff Empire Bank's Motion to Dismiss the Counterclaim of Defendant Paula Tate (Dkt. # 20) and Plaintiff Empire Bank's Motion to Dismiss the Counterclaim of Defendants Rebecca J. Dumond, Jacqui Ann Marouk, and Pamela R. Boone (Dkt. # 35). Empire Bank (Empire) argues that defendant Paula Tate's counterclaim and defendants Rebecca J. Dumond, Jacqui Ann Marouk, and Pamela R. Boone's counterclaim should be dismissed because guarantors are not covered under the Equal Credit Opportunity Act (ECOA) and because the counterclaims were not timely filed. Tate, Dumond, Marouk, and Boone (collectively, Spousal Guarantors) respond that the statute of limitations is either inapplicable or should be tolled and that guarantors are covered by the ECOA.

## I.

In April 2008, Sundance Valley Development, LLC (Sundance) and Citizens National Bank of Springfield (CNB) entered into a construction loan agreement for the construction and development of real estate in Nixa, Missouri. Dkt. # 1, at 6. Sundance also executed a promissory note in the principal amount of $12,000,000 payable to CNB. Id. Also in April 2008, a number of

individuals and entities, including the Spousal Guarantors, executed guaranties of various amounts of Sundance's indebtedness. Id.; see also Dkt. # 16, at 2.

The guaranty executed by Paula Tate was also executed by Kenneth L. Tate, her husband,[1] and related entities. Dkt. # 1, at 9-10; Dkt. # 16, at 3. It was limited to 20.99% of the promissory note, or $2,310,000. Dkt. # 1, at 10; Dkt. # 16, at 3. The guaranty executed by Rebecca Dumond was also executed by Bill J. Dumond, her husband, and related entities. Dkt. # 1 at 8; Dkt. # 25, at 3. It was limited to 24.37% of the promissory note, or $2,681,250. Dkt. # 1, at 8; Dkt. # 25, at 3. The guaranty executed by Jacqui Ann Marouk was also executed by John Sarkis Marouk, her husband, and related entities. Dkt. # 1 at 11; Dkt. # 25, at 5. It was limited to 18.37% of the promissory note or $2,021,250. Dkt. # 1, at 11-12; Dkt. # 25, at 5. The guaranty executed by Pamela Boone was also executed by Robert B. Boone, her husband, and related entities. Dkt. # 1 at 13; Dkt. # 25, at 5. It was limited to 73.12% of the promissory note, or $8,043,750. Dkt. # 1, at 13; Dkt. # 25, at 5.

On October 15, 2010, CNB and Empire merged. Dkt. # 1, at 6. Empire was the surviving entity and succeeded the right, title, and interest of CNB. Id.

In May 2012, Empire, Sundance, and the guarantors of Sundance's indebtedness, including the Spousal Guarantors, entered into a modification and extension agreement. Id.; see also Dkt. # 16, at 3; Dkt. # 25, at 2. An initial payment was made by Sundance to Empire and, pursuant to the extension agreement, the maturity date of the remaining balance due on the promissory note was extended to December 4, 2012. Dkt. # 1, at 7; see also Dkt. # 25, at 2. On December 4, 2012, the

---

[1] As of July 26, 2013, Paula Tate and Kenneth L. Tate were in the midst of divorce proceedings. Dkt. # 16, at 5.

promissory note matured and all amounts due on the promissory note became payable to Empire. Dkt. # 1, at 7. Empire alleges that Sundance has failed to pay the amount due on the promissory note and is in default. Id. Empire further alleges that the Spousal Guarantors, among others, have failed to pay their guaranteed portions of the amount owed under the promissory note. Id. at 9-10, 12, 14.

Empire filed suit seeking, inter alia, from the Spousal Guarantors the amounts it believes are owed to it under their respective guaranties. Id. at 9, 11-12, 14. Tate filed an answer and counterclaim. Dkt. ## 16, 18. In her counterclaim, Tate alleges that she was required to sign a guaranty because she was the spouse of Kenneth L. Tate, and for no other reason. Dkt. # 16, at 6. Tate alleges that requiring her to sign a guaranty merely because of her marital status is a violation of the ECOA. Id. Tate seeks a declaration that, because it is in violation of the ECOA, the guaranty is void, unenforceable, cancelable, or rescindable. Id. at 7. Tate also seeks equitable relief of recoupment, and recovery of the payments she has made towards the promissory note, as well as attorney fees and costs. Id. Dumond, Marouk, and Boone filed an answer and counterclaim. Dkt. ## 25, 32. In their counterclaim, Dumond, Marouk, and Boone allege that they were required to sign guaranties because they are the spouses of Bill J. Dumond, John Sarkis Marouk, and Robert B. Boone, and for no other reason. Dkt. # 25, at 8-9. They allege that requiring them to sign guaranties merely because of their marital status is a violation of the ECOA. Id. at 9. They also seek a declaration that, because they are in violation of the ECOA, their guaranties are void, unenforceable, cancelable, or rescindable. Id. They also seek equitable relief of recoupment of "the amount of all damages sought by Empire Bank, including attorney fees and costs incurred in connection with this Counterclaim and the defense of this action." Id.

3

Empire filed a motion to dismiss Tate's counterclaim and a brief in support. Dkt. ## 20, 21. In its brief, Empire argues that Tate's counterclaim is time barred and that the ECOA is inapplicable because it does not apply to guarantors. Dkt. # 21 at 1. Empire also filed a motion to dismiss Dumond, Marouk, and Boone's counterclaim and a brief in support. Dkt. ## 35, 36. In its brief, Empire argues that Dumond, Marouk, and Boone's counterclaim is time barred and that the ECOA is inapplicable because it does not apply to guarantors. Dkt. # 36 at 1.[2]

## II.

Empire asserts that the Spousal Guarantors have failed to state a claim upon which relief can be granted, and it asks the Court to dismiss the Spousal Guarantors' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A counterclaim must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." See id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the

---

[2]  On November 15, 2013, Empire filed an unopposed motion for leave to file an amended complaint. Dkt # 49. The motion was granted; however, the amended complaint does not impact the pending motions to dismiss. Dkt. # 50. The amended complaint changes only the amount sought in recovery. Compare Dkt. # 1, with Dkt. # 51.

4

purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the counterclaim as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. See Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

### A.

Spousal Guarantors filed their counterclaims more than five years after executing the guaranties. Empire argues that the Spousal Guarantors' counterclaims are time barred and that the Spousal Guarantors are therefore unable to state a claim upon which relief can be granted. The ECOA, 15 U.S.C.§ 1691-1691f (2012), provides for a private right of action. Id. § 1691e(a). The Spousal Guarantors' claims accrued when they signed their guaranties. See Palmer v. Homecomings Fin., LLC, 677 F. Supp. 2d 233, 239 (D.D.C. 2010) (holding that a plaintiff's ECOA claim accrued at the time she signed the allegedly discriminatory loan documents). The statute of limitations on claims arising under the ECOA is currently five years. Id. § 1691e(f). However, at the time the guaranties were initially signed, the statute of limitations was two years. 15 U.S.C.§ 1691e(f) (2010), amended by Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-203, 124 Stat. 1376 (2010). A presumption against retroactive legislation applies "unless Congress has clearly manifested its intent to the contrary." Hughes Aircraft Co. v.

5

U.S. ex rel. Schumer, 520 U.S. 939, 946 (1997).  There is no indication that the Dodd-Frank Act's five year statute of limitation is intended to be applied retroactively.  Citgo Petroleum Corp. v. Bulk Petroleum Corp., No. 08-CV-654-TCK-PJC, 2010 WL 3212751, at *3 n.4 (N.D. Okla. Aug. 12, 2010). Therefore, a two year statute of limitations would have begun running in April 2008, when the Spousal Guarantors signed the initial guaranties, and would have barred claims brought after April 2010.  The Spousal Guarantors' counterclaims were brought in 2013.

The Spousal Guarantors argue that their claims arising from their initial guaranties are not time barred, because of the continuing violation doctrine.  The Spousal Guarantors argue that the extension agreement signed in May 2012 also violates the ECOA and is sufficient to render Empire's conduct a continuing violation.  Under the continuing violation doctrine, when a plaintiff "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period," any staleness concern disappears.  Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-381 (1982) (footnote omitted) (applying the continuing violation doctrine to the Fair Housing Act).  However, the continuing violation doctrine is not applicable to discrete discriminatory acts, even if those acts are related.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (discussing the continuing violation doctrine in the context of the Civil Rights Act of 1964).  Because the signing of the extension agreement was a discrete act, no continuing violation exists; the extension agreement is insufficient to revive time barred claims based upon the original guaranties.[3]  Because the continuing violation doctrine does not apply,

---

[3]    The Spousal Guarantors' counterclaims do not state any claims based upon the extension and modification agreement; all of their claims are based upon the original guaranties. See Dkt. ## 16, 25.

Empire's argument that the continuing violation doctrine should not apply because the Spousal Guarantors have waived any claims based upon the extension agreement need not be addressed.[4]

The Spousal Guarantors also argue that, even if the statute of limitations has run, they may still assert an ECOA violation by way of recoupment. Recoupment allows a debtor who has been sued based upon a transaction to assert a claim arising from the same transaction as a "defense" against the creditor. Citgo Petroleum Corp. v. Bulk Petroleum Corp., No. 08-CV-654-TCK-PJC, 2010 WL 3212751, at *2 n.2 (N.D. Okla. Aug. 12, 2010). The amount sought in recoupment may not exceed the amount of the primary claim sought by the creditor. Id. "Although 'recoupment' as a procedural device 'has largely been superseded by the counter-claim provisions of the Federal Rules of Civil Procedure,' recoupment is still used to avoid statutes of limitation." Id. (quoting Mayes v. Chrysler Credit Corp., 167 F.3d 675, 677 (1st Cir. 1999)). A counterclaim based in recoupment is construed and treated as a defense. Citgo Petroleum Corp. v. Bulk Petroleum Corp., No. 08-CV-654-TCK-PJC, 2010 WL 3931496, at *2 (N.D. Okla. Oct. 5, 2010).

An ECOA claim may be asserted defensively under the doctrine of recoupment. Citgo Petroleum Corp., 2010 WL 3212751, at *4; see also Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 (1st Cir. 1999); Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 32-33 (3rd Cir. 1995). The Spousal Guarantors may assert an ECOA violation through recoupment.

The Spousal Guarantors seek that their respective guaranties be ruled void, unenforceable, cancelable, or rescindable. Dkt. # 16, at 7; Dkt. # 25, at 9. This relief is permissible under the doctrine of recoupment; the Spousal Guarantors are, in effect, asserting a counterclaim of equal

---

[4] Consequently, Dumond, Marouk, and Boone's argument that the waiver may have been ineffective (see Dkt. # 41, at 4-5) also does not need to be addressed.

7

value to Empire's primary claim. However, Tate also seeks to recover the payments already made by her to Empire on her guaranty. Dkt. # 16, at 7. The amount sought in a recoupment claim may not exceed the amount of the primary claim asserted by the creditor. <u>Citgo Petroleum Corp.</u>, 2010 WL 3212751, at *2 n.2. In effect, recoupment is merely a defense against a claim asserted against the defendant. <u>See</u> <u>Bolduc</u>, 167 F.3d at 672. Recoupment does not allow a defendant to assert a counterclaim for more than what is being sought by the plaintiff -- i.e., recoupment does not allow a defendant to seek additional recovery beyond negating the plaintiff's claim. Tate is already seeking an amount equal to Empire's claim against her; recovery of the payments made on her guaranty is being sought in addition to negating Empire's claim. Under the doctrine of recoupment, Tate will be unable to recover the payments that she has already made, as pursuing those payments will result in her counterclaim seeking a greater amount than the amount asserted by Empire. Therefore, the portion of Tate's counterclaim seeking compensation for the payments already made to Empire on her guaranty should be dismissed.

The Spousal Guarantors also argue that an ECOA violation may be asserted as an affirmative defense based on illegality. Dkt. # 22, at 7; Dkt. # 41, at 2. These arguments need not be addressed, as Empire's motions to dismiss seek to dismiss the Spousal Guarantors' counterclaims, not to negate the affirmative defenses the Spousal Guarantors have plead. <u>See generally</u>, Dkt. ## 20, 21, 35, 36.

**B.**

As the basis for their equitable claim of recoupment, Spousal Guarantors argue that Empire [CNB] violated the ECOA in requiring the guaranties. Empire argues that guarantors are not applicants under the ECOA and are not protected by it. The ECOA prohibits discrimination by creditors "against any applicant, with respect to any aspect of a credit transaction . . . on the basis

of . . . sex or marital status." 15 U.S.C. § 1691(a). One of the purposes of the ECOA "is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." Anderson v. United Fin. Co., 666 F.2d 1274, 1277 (9th Cir. 1982). Another purpose of the statute was "to prevent loans from being conditioned automatically on the securing of the signature of the non-borrowing spouse." Mayes v. Chrysler Credit Corp., 167 F.3d 675, 676 (1st Cir. 1999).

The Federal Reserve Board[5] has promulgated Regulation B, which implements the ECOA. 68 Fed. Reg. 13144, 13144 (March 18, 2003). "In addition to a general prohibition against discrimination, the regulation contains specific rules concerning: the taking and evaluation of credit applications, how credit history information is reported on accounts used by spouses, procedures and notices for credit denials and other adverse action, and limitations on requiring signatures of persons other than the applicant on credit documents." 68 Fed. Reg. 13144, 13144. "Regulation B sets up a comprehensive scheme outlining when a creditor discriminates based on sex or marital status by requiring the signature of a spouse on any credit instrument." Citgo Petroleum Corp., 2010 WL 3931496, at *4.

Regulation B provides:

(1) Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

---

[5] In 2011, the Consumer Financial Protection Bureau became the agency charged with implementing the ECOA. Compare 15 U.S.C. § 1691b (2011), with 15 U.S.C. § 1691b (2010).

12 C.F.R. § 202.7(d). "For purposes of § 202.7(d), the term [applicant] includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R. § 202.2(e). The Official Comments to § 202.7 explain further that a "guarantee on an extension of credit is part of a credit transaction and therefore subject to the regulation," and that

> [t]he rules in § 202.7(d) bar a creditor from requiring the signature of a guarantor's spouse just as they bar the creditor from requiring the signature of an applicant's spouse. . . . If an evaluation of the financial circumstances of an officer indicates that an additional signature is necessary, however, the creditor may require the signature of another person in appropriate circumstances in accordance with § 202.7(d)(2).

68 Fed. Reg. 13144, 13192.

One circuit court has expressed doubt that the term "applicant" can be interpreted to include guarantors, calling into question the propriety of Regulation B. Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., 476 F.3d 436, 441 (7th Cir. 2007).[6] That court's position appears to be the minority view. See, e.g., Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 30-331 (3rd Cir. 1995) (accepting the Federal Reserve Board's definition of "applicant"); Citgo Petroleum Corp., 2010 WL 3931496, at *9 (declining to follow Moran and adhering to Regulation B); F.D.I.C. v. Medmark, Inc., 897 F.Supp. 511, 514 (D. Kan. 1995) (concluding a guarantor may assert an alleged ECOA violation defensively); Bank of the West v. Kline, 782 N.W.2d 453, 458 (Iowa 2010) (holding that guarantors are "applicants" under the ECOA); Eure v. Jefferson Nat'l Bank, 448 S.E.2d 417, 417-18, 421 (Va. 1994) (determining that requiring a spousal guaranty in violation of Regulation B is a violation of the ECOA); W. Star Fin., Inc. v. White, 7 P.3d 502, 505-06 (Okla. Civ. App. 2000)

---

[6] That court reasoned that the term "applicant" is unambiguous (and does not include guarantors), that including guarantors would expand liability beyond what Congress intended, and that if an applicant's spouse is required to sign a guaranty of the applicant's debt, it is the applicant who has been discriminated against, not the guarantor. Moran Foods, 476 F.3d at 441.

10

(allowing the claim of a spousal guarantor that her rights under the ECOA were violated to proceed to trial); see also Mayes v. Chrysler Credit Corp., 167 F.3d 675, 677 (1st Cir. 1999) ("The paradigm case is the spouse who is wrongly made to . . . guarantee a debt but may be unconscious of the violation . . . .").

Empire urges this Court to accept the rationale of Moran, while the Spousal Guarantors ask that this Court to reaffirm the reasoning of Citgo. Whether the term "applicant" includes guarantors is not unambiguous. Accepting that the term includes guarantors would best effectuate the ECOA's goal of preventing discrimination based upon marital status. Additionally, adopting the reasoning of Moran would result in the elimination of "entire aspects of the Federal Reserve Board's implementation scheme." Citgo Petroleum Corp., 2010 WL 3931496, at *9. Therefore, this Court declines to follow Moran and instead follows Regulation B. Consequently, the Spousal Guarantors are applicants under the ECOA, and their counterclaims for declaratory relief and recoupment should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff Empire Bank's Motion to Dismiss the Counterclaim of Defendant Paula Tate (Dkt. # 20) is **granted in part and denied in part**; it is granted as to Paula Tate's claim for the recovery of all payments made by her under the guaranty, and denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff Empire Bank's Motion to Dismiss the Counterclaim of Defendants Rebecca J. Dumond, Jacqui Ann Marouk, and Pamela R. Boone (Dkt. # 35) is denied.

**DATED** this 3rd day of December, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

11