# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

EMPIRE BANK,                     )

                                  )

                 **Plaintiff,**       )

                                    )

v.                                 )         **Case No. 13-CV-0388-CVE-PJC**

                                    )

BILL J. DUMOND, et al.,          )

                                    )

                 **Defendants.**     )

## OPINION AND ORDER

Now before the Court are Defendants' Motion for Partial Summary Judgment (Dkt. # 72) and Plaintiff Empire Bank's Motion for Partial Summary Judgment (Dkt. # 76). The defendants other than Paula Tate (moving defendants) argue in their motion for partial summary judgment that they owe a deficiency to Empire Bank (Empire), that Oklahoma law governs their guaranties, that Okla. Stat. tit. 12, § 686, applies to guarantors, and that they are entitled to set off the fair market value of the properties securing the obligation underlying their guaranties. Dkt. # 72. In its motion for summary judgment, Empire argues that defendants owe a deficiency to it, that Missouri law governs the calculation of the deficiency, that section 686 does not apply to guarantors, and that defendants are not entitled to set off the fair market value of the properties securing the obligation underlying their guaranties. Dkt. # 76.

## I.

On April 9, 2008, Sundance Valley Development, LLC (Sundance) and Citizens National Bank of Springfield (CNB) entered into a construction loan agreement for developing real estate in Nixa, Missouri. Dkt. # 72, at 7; Dkt. # 79, at 5. The same day, Sundance executed a promissory note "in the principal amount of $12,000,000.00 payable to CNB." Dkt. # 72, at 7; <u>see also</u> Dkt. #

79, at 5. The promissory note states that it will be governed by the law of Missouri. Dkt. # 79-1, at 2. The note was to mature on April 9, 2010. Dkt. # 76, at 2; Dkt. # 82, at 3; Dkt. # 83, at 6. Also on April 9, 2009, Sundance conveyed 190 acres in Nixa (Sundance Valley Property) by deed of trust, and Green Valley Land, LLC (Green Valley) conveyed 120 acres in Nixa (Green Valley Property) by deed of trust, "to Leland L. Ganaway, as trustee, to secure the payment of the [promissory note]." Dkt. # 72, at 7; <u>see also</u> Dkt. # 76, at 2; Dkt. # 79, at 5; Dkt. # 82, at 3; Dkt. # 83, at 6. Both deeds of trust designate Missouri law as governing. Dkt. # 79, at 6-7; Dkt. # 84, at 2. Five days prior, defendants "executed guaranties, drafted by CNB, in the State of Oklahoma in connection with the CNB loan to Sundance." Dkt. # 72, at 7-8; <u>see also</u> Dkt. # 79, at 5. Section 7 of each guaranty provides:

> The Undersigned waives any and all defenses, claims, and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person, whether or not on account of a related transaction. The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.

Dkt. # 72, at 8 (quoting Dkt. # 72-3, at 2; Dkt. # 72-4, at 2; Dkt. # 72-5, at 2; Dkt. # 72-6, at 2); <u>see also</u> Dkt. # 79, at 5.

"On October 15, 2010, CNB and Empire executed an agreement of merger that combined the two banks with Empire the surviving entity, succeeding the right, title and interests of CNB."

Dkt. # 72, at 8; <u>see also</u> Dkt. # 79, at 5. Between April 2010 and May 2012, CNB, Empire, Sundance, Green Valley, and all guarantors "entered into a number of Modification and Extension Agreements whereby the maturity date of the Promissory Note was extended." Dkt. # 76, at 3; <u>see also</u> Dkt. # 82, at 3; Dkt. # 83, at 6. On May 12, 2012, Empire, Sundance, Green Valley, and defendants entered into another modification and extension agreement, which extended the maturity date for the promissory note to December 4, 2012. Dkt. # 76, at 3; Dkt. # 82, at 3; Dkt. # 83, at 6.[1]

The promissory note matured on December 4, 2012. Dkt. # 72, at 8; Dkt. # 79, at 5. "As a result, all amounts due and owing under the Promissory Note and other Loan Documents became immediately due and payable to [Empire]." Dkt. # 76, at 3; <u>see also</u> Dkt. # 82, at 3; Dkt. # 83, at 6. Empire asserts that the amount due, as of April 30, 2013, was $9,218,091.74. Dkt. # 76, at 4.

Despite demand, Sundance refused to pay Empire as required by the promissory note. Dkt. # 76, at 4; Dkt. # 82, at 3; Dkt. # 83, at 6. "On April 30, 2013, a trustee (foreclosure) sale was conducted and the Green Valley Property was sold for $370,000.00 and the Sundance Valley Property was sold for $3,000,000.00." Dkt. # 72, at 8; <u>see also</u> Dkt. # 79, at 5.[2] Empire was the high bidder for the properties, and both were sold to it. Dkt. # 76, at 4; Dkt. # 82, at 3; Dkt. # 83, at 7. The sale proceeds were applied against the unpaid amounts due. Dkt. # 76, at 4; Dkt. # 82, at 3; Dkt. # 83, at 7. Following the sales, Empire asserts that there remains $5,848,091.74 owed on the promissory note. Dkt. # 72, at 8; Dkt. # 79, at 5. "The Guarantees [sic] provide that Defendants will

---

[1]     This extension was conditional on a payment to Empire by Sundance. Dkt. # 76, at 2; Dkt. # 82, at 3; Dkt. # 83, at 6. The payment was made. Dkt. # 76, at 2; Dkt. # 82, at 3; Dkt. # 83, at 6.

[2]     The legality and enforceability of the sale is being challenged in another case in Missouri. <u>See</u> Dkt. # 83-2.

pay a percentage or limited dollar amount of the Deficiency to [Empire]."  Dkt. # 76, at 5; Dkt. # 82, at 4; Dkt. # 83, at 7.  Defendants have not made any payments under the guaranties.  Dkt. # 79, at 6; Dkt. # 84, at 2.

Empire filed its complaint in this case on June 28, 2013, and an amended complaint on November 18, 2013.  Dkt. ## 1, 51.  Jurisdiction is based upon diversity of citizenship.  Dkt. # 51, at 4.  Moving defendants filed a motion for summary judgment on March 7, 2014.  Dkt. # 72.  They "request judgment that the precise terms of their guaranty obligation is for any deficiency remaining after the foreclosure of the subject properties; that Oklahoma law mandates a hearing for the judicial determination of the deficiency; and finally that Guarantors' statutory rights to set off the fair and reasonable market value of the mortgage properties against the money judgment demanded by [Empire] have not been waived." Id. at 6.  Empire responded (Dkt. # 79) and the moving defendants replied (Dkt. # 84).  Empire filed a motion for partial summary judgment on March 14, 2014.  Dkt. # 76.  It argues that Missouri law governs the calculation of any deficiency, that no setoff is warranted, and that Empire is entitled to a deficiency based upon the balance owed and the sale price of the foreclosed properties.  Id.  Both the moving defendants and Paula Tate responded (Dkt. ## 82, 83) and Empire replied (Dkt. # 87).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

At issue are the guaranties that each defendant has executed.

A guaranty is a promise to answer for the debt, default or miscarriage of another person. A guarantor has a collateral obligation which is independently and separately enforceable from that of the principal debtor or obligor. Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor.

Lum v. Lee Way Motor Freight, Inc., 757 P.2d 810, 814 (Okla. 1987) (footnotes omitted).  The

motions for partial summary judgment by Empire and the moving defendants seek a determination

of the law governing the defendants' guaranties, the applicability of Okla. Stat. tit. 12, § 686 to the

guaranties, and the method of calculating the deficiency.  Empire's motion also seeks a

determination of the amount of the deficiency.

**A.  Moving Defendants' Motion for Partial Summary Judgment**

**1.  Choice of Law**

Moving defendants argue that "Oklahoma law applies in the interpretation and enforcement

of the guaranties."  Dkt. # 72, at 13.  When jurisdiction is based upon diversity of citizenship, a

federal court should apply the conflict of laws rules of the state in which it sits.  Klaxon Co. v.

Stentor Electric Mfg.Co., 313 U.S. 487, 496-97 (1941).  "This is true even when choice of law

determinations involve the interpretation of contract provisions."  Shearson Lehman Bros., Inc. v.

M & L Invs., 10 F.3d 1510, 1514 (10th Cir. 1993).  Oklahoma will enforce the choice of law

provisions in a contract.  See Fossil Creek Energy Corp. v. Cook's Oilfield Servs., 242 P.3d 537,

541-42 (Okla. Civ. App. 2010); see also Harvell v. Goodyear Tire & Rubber Co., 164 P.3d 1028,

1033-34 (Okla. 2006) ("However, in Oklahoma, the established choice of law rule in contract

actions known as *lex loci contractus* is that, **unless the contract terms provide otherwise**, the

nature, validity, and interpretation of a contract are governed by the law where the contract was

made.") (italics in original) (emphasis added); Carmack v. Chem. Bank N.Y. Trust Co., 536 P.2d

897, 899 (Okla. 1975) (stating that "a contract may provide *the choice of law* under which it is to

be governed") (emphasis in original).  Each guaranty contains two provisions regarding what law

shall govern it: (1) "This guaranty shall be governed by the laws of the State in which it was

executed" and (2) "This Guaranty shall be governed, at Lender's election, by the laws of the state of Missouri or by the laws of the State in which it is executed." Dkt. # 72-3, at 2, 3; Dkt. # 72-4, at 2, 3; Dkt. # 72-5, at 2, 3; Dkt. # 72-6, at 2, 3. Additionally, "[t]he parties have stipulated that the Guaranties were executed in Oklahoma and that Oklahoma law applies to the interpretation and enforcement of the Guaranties." Dkt. # 38, at 4; <u>see also</u> Dkt. # 72, at 7-8, Dkt. # 79, at 5. The Court interprets the provisions of the guaranties and the stipulation as specifying that CNB and Empire have elected for the guaranties to be governed by Oklahoma law. In accordance with their choice of law provisions, the guaranties should be interpreted according to the laws of Oklahoma.[3]

Empire argues that the term "deficiency" within the guaranties should be governed by Missouri law. Dkt. # 79, at 8-10. Empire argues that because the promissory note is governed by Missouri law, the foreclosed properties are located in Missouri, and the foreclosures took place in Missouri, that term must be governed by Missouri law. <u>Id.</u> In support of its argument, Empire cites Restatement (Second) of Conflict of Laws § 229 (1971). <u>Id.</u> at 10. Section 229 is applicable only to the method of foreclosure of a mortgage on land and the resulting interests in the land. <u>See</u> Restatement (Second) of Conflict of Laws § 229. Rights created by a guaranty agreement are governed by Restatement (Second) of Conflict of Laws § 194. <u>See id.</u> § 194 cmt. a. Where a guaranty agreement contains a choice of law provision--as is the case here--, the rights created by

---

[3] Even if Oklahoma did not give effect to choice of law provisions, the result would be the same. Oklahoma law specifies that a contract "is to be interpreted according to the law and usage of the place were it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15, § 162; <u>see also</u> <u>Bernal v. Charter Cnty. Mut. Ins. Co.</u>, 209 P.3d 309, 315 (Okla. 2009). None of the guaranties lists a place of performance. <u>See</u> Dkt. ## 72-3, 72-4, 72-5, 72-6. However, the parties have stipulated that the guaranties were executed in Oklahoma. Dkt. # 38, at 4. Therefore, general Oklahoma contract law specifies that the guaranties should be interpreted according to Oklahoma law.

the guaranty will be governed by the chosen law.  Id. § 194 cmt. b.  The rights created by the

guaranties, including the right to collect the deficiency remaining after foreclosure, are governed by

the law chosen by the guaranties, i.e., Oklahoma law.  The term "deficiency" will be defined

according to Oklahoma law.  Moving defendants' motion for partial summary judgment should be

granted to the extent that it requests that the guaranties be interpreted according to Oklahoma law.

## 2.  Applicability of Okla. Stat. tit. 12, § 686

Moving defendants argue that Okla. Stat. tit. 12, § 686, applies to guarantors.  Dkt. # 72, at

17-20.  Section 686 states:

> In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgment [sic] or judgments shall be rendered for the amount or amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for sale of the property charged and the application of the proceeds; or such application may be reserved for the future order of the court, and the court shall tax the costs, attorney's fees and expenses which may accrue in the action, and apportion the same among the parties according to their respective interests, to be collected on the order of sale or sales issued thereon; when the same mortgage embraces separate tracts of land situated in two or more counties, the sheriff of each county shall make sale of the lands situated in the county of which he or she is sheriff. No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale. The court may, in the order confirming a sale of land under order of sale on foreclosure or upon execution, award or order the issuance of a writ of assistance by the clerk of the court to the sheriff of the county where the land is situated, to place the purchaser in full possession of such land, and any resistance of the service of such writ of assistance shall constitute an indirect contempt of the process of such court, and if any person who has been removed from any lands by process of law or writ of assistance or who has removed from any lands pursuant to law or adjudication or direction of any court, tribunal or officer, afterwards, without authority of law, returns to settle or reside upon such land, the person shall be guilty of an indirect contempt of court, and may be proceeded against and punished for such contempt. Notwithstanding the above provisions, no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety

(90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a post-judgment deficiency order upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall enter a post-judgment deficiency order. Such post-judgment deficiency order shall be for an amount equal to the sum of the amount owing by the party liable as determined by the order with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher. If no motion for a post-judgment deficiency order shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

In any action pending at the time this act becomes effective or thereafter commenced, other than an action to foreclose a mortgage, to recover a judgment for any indebtedness secured by a mortgage on real property and which originated simultaneously with such mortgage and which is secured solely by such mortgage, against any person or corporation directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to set off the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances. Provided that nothing in this section shall limit or reduce any post-judgment deficiency order in favor of or in behalf of the state for any debts, obligations or taxes due the state, now or hereafter.

Okla. Stat. tit. 12, § 686.

Okla. Stat. tit. 12, § 686 is known as the anti-deficiency statute. Founders Bank & Trust Co. v. Upsher, 830 P.2d 1355, 1359 n.4 (Okla. 1992). Section 686 does not apply to guaranties. Bank of Okla., N.A. v. Red Arrow Marina Sales & Serv., Inc., 224 P.3d 685, 689, 694, 697 (Okla. 2009) (reaffirming that the protections of the anti-deficiency statute are "totally inapplicable" to determining "the outer reach of a guarantor's obligation," stating that the statute "addresses itself **exclusively** to the relationship between the mortgage creditor and debtor" and that "its protection

applies to the debtor alone," explaining that "the benefits of § 686 inure exclusively to the mortgage debtor" and that "[t]he sole party protected by § 686 is the mortgage debtor," and reiterating that "[t]he distinct obligation of a guaranty also falls outside the anti-deficiency statute's purview") (emphasis in original);[4] Riverside Nat'l Bank v. Manolakis, 613 P.2d 438, 441 (Okla. 1980) ("Our anti-deficiency statute, § 686, addresses itself exclusively to the creditor/debtor relationship. It does not deal with the more complex, tripartite relationship of guarantor/debtor/creditor or with the rights under a guaranty agreement. . . . In short, the protection of § 686 applies only to debtors."); INA Life Ins. Co. v. Brandywine Assocs., Ltd., 800 P.2d 1073, 1077 (Okla. Civ. App. 1990) (holding that section 686 is applicable "only to the debtor/creditor relationship" and does not "inure[] to the benefit of Guarantors"); see also Founders Bank & Trust Co., 830 P.3d at 1362 n.23 (explaining that guaranties are often used to protect lenders against losses resulting from the application of section 686).[5] A guaranty, so long as it arises from a contractual obligation that is separate and distinct from the principal debt, "is governed by statutory provisions unrelated to those of § 686." Bank of Okla.,

---

[4]     Section 686 was amended in 2010. 2010 Okla. Sess. Laws 680-82. However, the 2010 amendments are not relevant to the issue of whether section 686 applies to guarantors and in no way affect the holding or reasoning of this case, or any other case cited in this order. Compare Okla. Stat. tit. 12, § 686 (2011), with Okla. Stat. tit. 12, § 686 (2001).

[5]     One Oklahoma case does contain language implying that section 686 extends to guaranties. See JPMorgan Chase Bank, N.A., v. Specialty Rests., Inc., 243 P.3d 8, 13-15 (Okla. 2010). However, it also explicitly acknowledges that section 686 "addresses itself to the creditor/debtor relationship" and "does not deal with the more complex, tripartite relationship of guarantor/debtor/creditor or with the rights under the guaranty agreement." Id. at 13 n.27. The most consistent reading of the case is either that the court was using "section 686" as judicial shorthand for "the protections of section 686 as made applicable to guaranties through Okla. Stat. tit. 15, §§ 321-344" or that the court determined that, because the guaranties' waivers were so broad as to cover any possible application of section 686, there was no need to determine once again whether section 686 applies to the guaranties.

224 P.3d at 698; see also Riverside Nat'l Bank, 613 P.2d at 441 ("The obligations in [a guaranty agreement] are regulated by the distinctly unrelated and separate provisions of [Okla. Stat. tit. 15 §§ 321-344]). The protections provided by those statutes may be waived. Bank of Okla., 224 P.3d at 698.

Moving defendants argue that the decisions holding that section 686 does not benefit guarantors apply only to the first paragraph of section 686 and do not extend to its second paragraph. Dkt. # 84, at 6. This distinction is not found within the text of any of those decisions. See generally Bank of Okla., 224 P.3d 685; Riverside Nat'l Bank, 613 P.2d 438; INA Life Ins. Co., 800 P.2d 1073. One even describes the second paragraph of section 686 as the "pertinent part" of section 686 prior to determining that section 686 does not apply to guarantors. INA Life Ins. Co., 800 P.2d at 1076. Even assuming the referenced holdings were so limited, the second paragraph of section 686 is not intended to apply to guarantors. This view is supported by dicta[6] in another Oklahoma case. See Local Fed. Bank, F.S.B. v. Jico, Inc., 842 P.2d 368, 370 & n.5 (Okla. Civ. App. 1992) (quoting, and identifying as the pertinent portion,--within a footnote--the second paragraph of section 686 immediately before stating that section 686, "'address[ed] . . . exclusively to the creditor/debtor relationship,' 'does not deal with the more complex, tripartite relationship of the guarantor/debtor/creditor or with the rights under a guaranty agreement.'") (quoting Riverside Nat'l Bank, 613 P.2d at 441) (alterations in original). The second paragraph pertains "to *in personam* actions on the debt secured by a mortgage, rather than the *in rem* foreclosure action." Little Bear Res., LLC v. Nemaha Servs., Inc., 249 P.3d 957, 960 (Okla. Civ. App. 2011). An action on a

---

[6]     The court in Local Fed. Bank, F.S.B. v. Jico, Inc., 842 P.2d 368 (Okla. Civ. App. 1992), found it unnecessary to determine whether section 686 applied to the guarantors because, even if it did, they had waived their rights to its protections. Id. at 370.

guaranty is not an in personam action on a debt secured by a mortgage, it is an action on a

contractual agreement in which a party agrees to answer for the debt of another. Additionally, when

read in conjunction with the first paragraph of section 686, it is clear that the second paragraph is

intended to avoid a situation in which a lender attempts to circumvent the protections of the first

paragraph by bringing an in personam action instead of an in rem action. See Overton v. Gambill

(In re Estate of Little Bear), 909 P.2d 42, 50 (Okla. 1995) ("Words used in a part of a statute must

be interpreted in light of their context and understood in a sense which best harmonizes with all

other parts of the statute.").

Moving defendants also argue that New York courts' construction of a similar New York

statute should inform the interpretation of section 686. Dkt. # 72, at 17-20. The Tenth Circuit has

previously stated that portions of the New York statute have been inserted into section 686 and that

"there are grounds for assuming that the Oklahoma Courts would adopt New York's construction

of the critical language of the amendment." Ingerton v. First Nat'l Bank & Trust Co. of Tulsa, 291

F.2d 662, 665 (10th Cir. 1961).[7] However, the Oklahoma Supreme Court has since rejected that

view to the extent that it suggests that "§ 686 should be construed as applicable to guaranty

agreements" because New York treats guaranties differently than Oklahoma.[8] Founders Bank &

---

[7]    The "critical language of the amendment" referred to by the Tenth Circuit was contained within the first paragraph, not the second paragraph, of section 686. See Okla. Stat. tit. 12, § 686; Ingerton, 291 F.2d at 665. However, moving defendants imply that the Tenth Circuit's reasoning is equally applicable to the second paragraph of section 686. Dkt. # 72, at 17 n.11.

[8]    Unlike Oklahoma, New York treated guaranties as a "related transaction" and did not adopt the Field Code provisions regulating guaranties. Riverside Nat'l Bank, 613 P.2d at 440 n.7; see also Founders Bank & Trust Co., 830 P.3d at 1363 n.31 (stating that Riverside Nat'l Bank, 613 P.2d at 440 n.7, provides further explanation of reasoning behind its decision).

Trust Co., 830 P.3d at 1363 n.31; see also Riverside Nat'l Bank, 613 P.2d at 440 n.7 (stating that the Tenth Circuit's "hypothesis seems valid until the application of the anti-deficiency statute to guarantors is raised as an issue"). New York's construction of its own statute is, therefore, unhelpful in determining whether any part of section 686 applies to guarantors.

Section 686 does not apply to guaranties and, as guarantors, moving defendants are not directly entitled to its protections, including the right to a hearing to determine the extent of the deficiency. Moving defendants' motion for partial summary judgment should be denied to the extent that it argues that section 686 applies to guarantors or that a hearing must be granted pursuant to section 686. However, guarantors may be entitled to the protections of 686 derivatively, through the language of the guaranties themselves or through the statutes governing guaranties. See e.g., Apache Lanes, Inc. v. Nat'l Educators Life Ins. Co., 529 P.2d 984, 986-87 (Okla. 1974) (holding that if a debt is discharge pursuant to section 686, a guarantor may be exonerated pursuant to Okla. Stat. tit. 15, § 338, and Okla. Stat. tit. 15, § 344).

**3. Waiver of Statutory Protections**

Moving defendants argue that they have not "waived their right to a set off of the fair and reasonable market value of the properties." Dkt. # 72, at 21. As discussed supra, Okla. Stat. tit. 12, § 686 does not directly entitle moving defendants to a setoff. However, Okla. Stat. tit. 15, § 341 provides that if the principal's debt is set off, the guarantor's debt must be set off as well. See Okla. Stat. tit. 15, § 341 ("The acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of a guarantor thereof, in the same measure as that of a principal, but does not otherwise affect it."); Founders Bank & Trust Co., 830 P.2d at 1364. This protection may be waived. Founders Bank & Trust Co., 830 P.2d at 1364; see also Bank of Okla., 224 P.3d

at 698.  Each guaranty in this case contains a provision that "[t]he Undersigned waives any and all

defenses, claims, and discharges of Borrower, or any other obligor, pertaining to Indebtedness,

except the defense of discharge by payment in full.  Without limiting the generality of the foregoing,

the Undersigned will not assert, plead or enforce against Lender . . . any setoff available against

Lender to Borrower or any such other person, whether or not on account of a related transaction."

Dkt. # 72-3, at 2; Dkt. # 72-4, at 2; Dkt. # 72-5, at 2; Dkt. # 72-6, at 2.[9]  This expressly waives

moving defendants' ability to plead that their liability should be set off to the extent that the

principal's liability must be set off.  Moving defendants have waived their protections under Okla.

Stat. tit. 15, § 341, and their right to a setoff.  Moving defendants' motion for partial summary

judgment should be denied to the extent that they argue that they have not waived that right.


### 4.  Moving Defendants' Obligations Pursuant to Their Guaranties

Both Empire and the moving defendants agree that the moving defendants' guaranty

obligations are "for any deficiency remaining after the foreclosure of the subject properties."  Dkt.

# 72, at 6; accord Dkt. # 79, at 8.[10]  However, the parties disagree as to what the term "deficiency,"

as used in the guaranties, constitutes.  A guarantor's obligation is contractual and defined by "the

precise terms of the guarantor's undertaking–the dimension or breadth of the promise."  Riverside

Nat'l Bank, 613 P.2d at 441.  The intent of the parties at execution controls the meaning of a

---

[9]     Moving defendants appear to argue that this waiver of the right to a setoff is actually a
        reservation of the right to a setoff.  See Dkt. # 84, at 9.  This is obviously contrary to the
        clear and unambiguous language of the guaranties.

[10]    However, Paula H. Tate, Rebecca J. Dumond, Jacqui Ann Marouk, and Pamela R. Boone
        maintain that their guaranties are unenforceable, void, rescindable, or cancelable.  Dkt. # 72,
        at 6 n.2.

guaranty's written terms.  <u>JPMorgan Chase Bank, N.A. v. Specialty Rests., Inc.</u>, 243 P.3d 8, 12 (Okla. 2010).  The parties' intent is gathered from the entire instrument and extrinsic evidence is not needed if the language is clear and explicit.  <u>Id.</u> at 12-13.  Language in a guaranty is to be given its plain and ordinary meaning unless a term is intended to possess a specific technical meaning.  <u>Id.</u> at 12.  "[U]nder Oklahoma law, guaranty agreements are construed most strongly against the guarantor."  <u>Id.</u>  Each guaranty states that "[t]he Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness . . . ."  Dkt. # 72-3, at 2; Dkt. # 72-4, at 2; Dkt. # 72-5, at 2; Dkt. # 72-6, at 2.  Moving defendants argue that the deficiency is "the amount claimed owed by Empire, less the market value of the Sundance Valley Property and the Green Valley Property as determined by the Court or the sales price of such properties, whichever shall be higher."  Dkt. # 72, at 16.

"A deficiency is defined as '[t]he amount still owed when the property secured by a mortgage is sold at a foreclosure sale for less than the outstanding debt; [especially], the shortfall between the proceeds from a foreclosure sale and an amount consisting of the principal debt plus interest plus foreclosure costs.'"  <u>Bank of Okla.</u>, 224 P.3d at 691 n.7 (quoting Black's Law Dictionary 455 (8th ed. 2004)) (alterations in original); <u>accord</u> Black's Law Dictionary 487 (9th ed. 2009); <u>see</u> <u>also</u> <u>Jones v. England</u>, 782 P.2d 119, 121 (Okla. 1989) ("A 'deficiency' in foreclosure practice is that part of a debt secured by mortgage not realized from the sale of the mortgaged property.").  There is nothing within the guaranties suggesting that the parties intended anything

other than this specific technical meaning.[11] See JPMorgan Chase Bank, 243 P.3d at 12 (noting that language in a guaranty is to be given its plain and ordinary meaning unless a term is intended to possess a specific technical meaning).

Moving defendants argue that this definition of "deficiency" no longer applies in Oklahoma, citing Bank of Okla., 224 P.3d at 691 n.10, for support. Dkt. # 72, at 14-15. However, footnote ten refers only to the calculation of a deficiency as required by section 686. Bank of Okla., 224 P.3d at 691 n.10. As discussed supra, section 686 does not apply to actions on guaranties. And, given the inclusion of a waiver designed to prevent the guarantors from claiming a right to a setoff, it is unfathomable that the parties to the guaranties intended to incorporate the setoff rights of section 686 into the term "deficiency." Likewise, the size of any deficiency owed by Sundance does not determine the meaning of the term "deficiency" as used in the guaranties; moving defendants admit that "[a]ny deficiency that may be owed by Sundance is not dispositive of the extent of the liability of Guarantors, as the obligation of Guarantors is separate and independent and depends on the precise terms of the guaranties." Dkt. # 72, at 13. Moving defendants' motion for partial summary judgment should be denied to the extent that they argue that the term "deficiency" incorporates a setoff of the fair and reasonable value of the foreclosed properties.

**B. Empire's Motion for Partial Summary Judgment**

**1. Choice of Law**

Empire argues that Missouri law governs the calculation of the deficiency owed by defendants. Dkt. # 76, at 8-9. As discussed supra, this argument is incorrect; Oklahoma law

---

[11]     This is especially true given that guaranties are construed against guarantors. JPMorgan Chase Bank, 243 P.3d at 12.

governs the calculation of the deficiency.  Empire's motion for partial summary judgment should be denied to the extent that Empire argues that Missouri law governs the calculation of the deficiency.

## 2.  Calculation of the Deficiency

Empire argues that section 686 does not apply to the guaranties, that defendants are not entitled to set off the fair market value of the foreclosed properties, and that any deficiency is calculated by subtracting the proceeds of the foreclosure sales from the balance owed under the guaranties.  Dkt. # 76, at 10-13.[12]  Defendants argue that section 686 applies to the guaranties[13] and that they are entitled to a setoff, which must be included in any calculation of a deficiency.  Dkt. # 82, at 7-11; Dkt. # 83, at 13-17.  As discussed supra, section 686 does not apply to guarantors, and neither the statutes of Oklahoma, nor the language of the guaranties, entitle defendants to set off the fair market value of the foreclosed properties.  As discussed supra, the deficiency shall be calculated by subtracting the proceeds of the foreclosure sales from the balance owed under the guaranties.

---

[12]  Empire also argues that, because Tate did not raise her alleged right to set off the fair market value of the foreclosed properties as an affirmative defense or counterclaim, Tate has waived that right.  Dkt. # 76, at 6 n.2; Dkt. # 87, at 1 n.1.  Because, as discussed supra, neither the laws of Oklahoma, nor the guaranties, provide a right to set off the fair market value of the foreclosed properties, this argument need not be addressed.

[13]  Tate adopts and raises the arguments raised by moving defendants in their motion for partial summary judgment.  Dkt. # 82, at 7 n.2.  However, Tate also cites an additional case not referenced by moving defendants.  Id. at 8-9.  Tate argues that Eufala Bank & Trust Co. v. Wheatley, 663 P.2d 393 (Okla. Civ. App. 1983), stands for the proposition that the second paragraph of section 686 applies even to non-judicial foreclosure sales of properties in other states.  Dkt. # 82, at 8-9.  This argument is inapplicable; the reason section 686 does not apply to defendants is because defendants are guarantors, not because the foreclosed properties are located in Missouri or because this action is not a foreclosure proceeding.  Eufala Bank & Trust dealt with the rights of a debtor, not a guarantor, and provides no support for the proposition that guarantors should be afforded the protections of section 686.  See 663 P.2d at 393-94.

Empire's motion for summary judgment should be granted to the extent that Empire requests that the deficiency be calculated on this basis.

### 3. Amount of the Deficiency

Empire requests that the Court "fix the precise principal amount of the Deficiency." Dkt. # 76, at 14. Because defendants are not entitled to a setoff, as discussed supra, the calculation of the deficiency is the balance owed minus the proceeds of the foreclosure sales. However, moving defendants argue that "[d]iscovery is ongoing and [moving defendants] have yet to verify the balance due under the Loan Documents and therefore dispute the balance stated." Dkt. # 83, at 6. At this stage, that is sufficient to raise a genuine dispute as to the amount of the deficiency (although not enough to raise a genuine dispute as to how the deficiency should be calculated). Empire's motion for partial summary judgment should be denied to the extent that Empire seeks a determination of the amount of the deficiency.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment (Dkt. # 72) is **granted in part and denied in part**; it is granted to the extent that it seeks a determination that Oklahoma law governs all aspects of the guaranties and is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff Empire Bank's Motion for Partial Summary Judgment (Dkt. # 76) is **granted in part and denied in part**; it is granted to the extent that it seeks a determination that any deficiency owed is calculated by subtracting the proceeds of the foreclosure sales from the balance owed under the guaranties and is denied in all other respects.

**IT IS FURTHER ORDERED** that counsel for all parties shall jointly contact Magistrate Judge T. Lane Wilson telephonically **no later than June 30, 2014**, to schedule a supplemental settlement conference.

**DATED** this 24th day of June, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE